**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-13131

Non-Argument Calendar

————————————

ZANE BYRD,

*Plaintiff-Appellant,*

*versus*

AUSTAL USA, LLC,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:24-cv-00244-C

————————————

Before ROSENBAUM, GRANT, and BLACK, Circuit Judges.

PER CURIAM:

Zane Byrd appeals from the magistrate judge's grant of summary judgment[1] in favor of his former employer, Austal USA, LLC (Austal), on his claims of discrimination and retaliation under the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), 42 U.S.C. § 12101, *et seq.* Byrd brings several issues on appeal, which we address in turn. After review,[2] we affirm.

## I. DISCRIMINATION

The Americans with Disabilities Act (ADA) prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). The ADAAA became effective on January 1, 2009, and revised the statutory definition of disability under the ADA to clarify that the definition of disability should be construed in favor of broad coverage. *See* 42 U.S.C. § 12102(4)(A); ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553.

Generally, courts adjudicate summary judgment motions in employment discrimination claims using the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework. *See*

---

[1] The parties consented to the exercise of jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] "We review a grant of summary judgment de novo, viewing all facts in the record in the light most favorable to the nonmovant and drawing all inferences in" the nonmovant's favor. *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1316-17 (11th Cir. 2024). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

*Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255-56 (11th Cir. 2007) (noting the burden-shifting *McDonnell Douglas* analysis applies in ADA cases). Under this framework, an employee first bears the burden of demonstrating a prima facie case, and if he does so, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse action. *Ismael v. Roundtree*, 161 F.4th 752, 759 (11th Cir. 2025). If the employer provides evidence that it had a legitimate reason for taking adverse action against the plaintiff, the *McDonnell Douglas* framework "simply drops out of the picture." *Id.* at 764. At that point, the court must determine "whether the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer" the decisionmaker intentionally discriminated or retaliated against the plaintiff. *Id.* (quotation marks omitted). If an employee does not establish a prima facie case, he "does not automatically lose on summary judgment." *Id.* Rather, the district court must consider whether the employee has established a convincing mosaic of intentional discrimination and deny summary judgment if he has. *Id.* at 765. The "convincing mosaic" is a metaphor for the summary judgment standard by which a plaintiff may overcome a motion for summary judgment by presenting circumstantial evidence of any form that creates a triable issue of the employer's discriminatory intent. *McCreight v. AuburnBank*, 117 F.4th 1322, 1335-37 (11th Cir. 2024).

A. *Prima Facie Case/Qualified Individual*

We begin our analysis with the *McDonnell Douglas* framework, and Byrd's burden of demonstrating a *prima facie* case. To make out a prima facie claim of ADAAA discrimination, the plaintiff must establish "(1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Holly*, 492 F.3d at 1255-56. The magistrate judge determined Byrd could not show he was a qualified individual as he could not perform an essential function of his position—regular attendance at work. The magistrate judge also determined Byrd caused the interactive process to break down to the extent Austal could have offered a reasonable accommodation to Byrd regarding attendance.

1. *Whether Attendance was an Essential Function*

Byrd argues that regular attendance was a marginal, not essential, function of his employment as a B-Class Electrician, and the magistrate judge erred by finding otherwise when he determined that Byrd was not a qualified individual under the ADAAA.

A "qualified individual" under the ADAAA is an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Essential functions are "fundamental job duties of a position that an individual with a disability is actually required to perform." *Holly*, 492 F.3d at 1257 (quotation marks omitted). "If the individual is unable to perform an essential function of his job, even with an accommodation, he

is, by definition, not a qualified individual and, therefore, not covered under the ADA." *Id.* at 1256 (quotation marks omitted). Whether a duty is essential is a multifactor case-by-case determination, though courts give "substantial weight" to the employer's view, including the "official position," such as written descriptions in employee handbooks, and the testimony of supervisors. *Id.* at 1257-58 (quotation marks omitted); *see* 42 U.S.C. § 12111(8). We have affirmed that attendance can be an essential function of a job when evidence is introduced supporting that finding. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365-66 (11th Cir. 2000) (holding that punctuality, as introduced by evidence in the record, was an essential function of a store manager's job); *Jackson v. Veterans Admin.*, 22 F.3d 277, 278-79 (11th Cir. 1994) (holding a housekeeping aide failed to show he was a qualified individual where he could not "satisfy the presence requirement of the job" despite being a satisfactory employee when he was present). Additionally, we have stated an employer need not eliminate an essential function of the job to accommodate an employee. *Holly*, 492 F.3d at 1256.

Viewing the record in the light most favorable to Byrd, his own testimony acknowledged that regular attendance was essential because Austal had an attendance policy in place that it enforced, the attendance policy was necessary because of Austal's work as a Navy contractor with strict external deadlines, and when Byrd failed to abide by the policy—other employees needed to cover for him to ensure Austal met its deadlines. Though Byrd asserted that he "started back exactly where [he] left off" when re-

turning to work after an absence, he also stated that B-Class Electricians "fill[ed] in for each other" when crew members were absent, and his supervisor testified that when a crew member was absent, he "had to move manpower to accommodate for those absences," which would result in "slipping on other tasks" or requiring overtime to ensure tasks were completed. As Roman Ecker, Byrd's supervisor, testified, Byrd's absences "did not mean that the work stopped or that the work could be 'made up' at some later time," and Byrd's absences were "rough" because they put extra pressure on his team to change the weekly plans while ensuring that "the jobs still get accomplished." Taking these facts together, the record shows that, even if Byrd always picked up his work where he left it, his supervisor was nonetheless required to reorganize other crew members' work to account for Byrd's absence.

Though Byrd notes that he was occasionally assigned to "cold" tasks that could be completed at a slower pace, he also testified that he was assigned to time-sensitive tasks. Even read in the light most favorable to Byrd, his own testimony demonstrates that B-Class Electricians were not exclusively placed on "cold" tasks for which strict deadlines were not imposed. Additionally, though Byrd correctly notes that he retained his job and received two raises despite his absenteeism, his two performance reviews flagged his absenteeism as an issue, and both reviews largely noted that Byrd performed at or above Austal's minimum standards.

Taking the evidence together and viewing it in the light most favorable to Byrd, attendance was an essential function of employment as a B-Class Electrician with Austal.  And, because attendance was an essential function, Austal was not required to eliminate attendance from Byrd's job functions to accommodate him. *Holly*, 492 F.3d at 1256.  Though Byrd contends that he could have been reasonably accommodated by a part-time schedule and opportunities for occasional leaves of absence, his attendance history, his own testimony, and the testimony of his supervisors all demonstrated that his accommodation would have required sporadic and unpredictable time off.  Byrd's unpredictable and frequent tardiness and absence, as well as Byrd's request for accommodations through Unum,[3] suggest that he could not perform the duty of timely attendance without an accommodation.

### 2. *Whether Byrd participated in the Interactive Process*

To the extent Austal could have offered Byrd a reasonable accommodation regarding his attendance so that he could be a qualified individual, Byrd contends the magistrate judge erroneously found he broke down the interactive process, noting an employee does not bear the burden of requesting specific accommodations from his employer.  "The ADA requires an employer to make reasonable accommodations to an otherwise qualified employee with a disability, unless doing so would impose an undue hardship." *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016)

---

[3] Unum is a third-party provider that administers leave issues such as FMLA and ADAAA for Austal.

(citation modified).  The employee bears the burden of identifying the accommodation and demonstrating its reasonableness, and if he fails to do so, the employer bears no burden of showing undue hardship.  *Id.*  Additionally, the employer's burden to provide the accommodation is only triggered when the employee makes a "specific demand" for an accommodation. *Id.*  The regulations governing the ADA also provide that it may be necessary for an employer "to initiate an informal, interactive process with the individual with a disability in need of the accommodation" to identify what reasonable accommodation should be provided.  29 C.F.R. § 1630.2(o)(3).  We have held where an employee failed to identify a reasonable accommodation, the employer was "under no duty to engage in an 'interactive process.'"  *Earl*, 207 F.3d at 1367.

"Liability simply cannot arise under the ADA when an employer does not obstruct an informal interactive process; makes reasonable efforts to communicate with the employee and provide accommodations based on the information it possesses; and the employee's actions cause a breakdown in the interactive process." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).  In *Frazier-White*, we stated an employer initiated the interactive process by encouraging an employee on "light duty" temporary disability status to discuss ADA accommodations with its risk management director and apply for other positions for which she would be capable.  818 F.3d at 1252-53, 1257.  The employee failed to do either action and instead requested an indefinite extension of her light-duty status.  *Id.* at 1257.  Accordingly, we

stated "[a]ny failure in the interactive process must . . . be attributed to [the] Plaintiff." *Id.*

The magistrate judge did not err in finding Byrd caused the interactive process to break down. Byrd states he texted his supervisor, Ecker, to let him know that he would be tardy or absent from work; however, it is not clear these text communications constituted a specific request for accommodations or engagement in the interactive process. *See Frazier-White*, 818 F.3d at 1257. The record indicates that, inasmuch as Byrd's text messages with his supervisor qualify as a request for accommodations, Ecker engaged in an informal interactive process by recommending that Byrd see a doctor for his ankle injury, telling him that he exceeded his limit for excused medical leave, and recommending that he keep Human Resources informed.

Moreover, Byrd fails to acknowledge that Austal engaged in the interactive process. The record shows that Byrd asked Sierra Gilder about receiving leave under the Family and Medical Leave Act (FMLA), he was told to apply for leave through Unum, and he made a specific request for leave on June 20, 2023. Unum then engaged in an interactive process by reevaluating his claim under the ADAAA because he did not qualify for FMLA leave. *See Frazier-White*, 818 F.3d at 1252-53, 1257. Unum requested corroborating medical documentation to process Byrd's ADAAA claim and stated that his claim would be placed on inactive status if he did not submit his documents by July 11, 2023. The magistrate judge did not

err in finding the undisputed evidence showed Byrd caused the interactive process to break down because he did not comply with Unum's request for documentation by July 11, 2023. *See id.*; *Stewart*, 117 F.3d at 1287. Therefore, the magistrate judge did not err in finding there was no genuine dispute of material fact as to whether Austal failed to engage in the interactive process.

The magistrate judge did not err in determining there is no genuine dispute of material fact as to whether Byrd was a qualified individual with a disability covered by the ADAAA. *See* 42 U.S.C. §§ 12111(8), 12112(a); *Holly*, 492 F.3d at 1256. Byrd failed to put forth evidence genuinely disputing Austal's evidence that attendance was an essential function of his position that he could not satisfy with or without a reasonable accommodation. *See* 42 U.S.C. § 12111(8). Accordingly, because Byrd failed to make a prima facie case of discrimination under the ADAAA, we affirm the magistrate judge's decision as to this issue. We now turn to whether Byrd presented a convincing mosaic of discrimination.

### B. Convincing Mosaic of Discrimination

Byrd asserts he presented a convincing mosaic of discrimination because there is a genuine dispute of material fact as to whether Austal's reason for firing him was pretextual. "[A] plaintiff will always survive summary judgment if he presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (citation modified). The convincing mo-

saic "may be made up of, among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systemically better treatment of similarly situated employees; and (3) evidence that the employer's justification is pretextual." *Akridge v. Alfa Ins. Co.*, 93 F.4th 1181, 1198 (11th Cir. 2024) (citation modified).

In *Lewis*, we found an employee presented a convincing mosaic of circumstantial evidence giving rise to a genuine issue of material fact where the employer (1) terminated her for being absent without leave after initiating her indefinite administrative leave request and denying her request to return to work, (2) gave no warning the employee would be fired upon the exhaustion of her accrued leave instead of reverting to unpaid administrative leave status, and (3) gave no notice the employee must file FMLA paperwork by a specific deadline. 934 F.3d at 1186. Taken together, we concluded the evidence could show the employer "was searching for a policy to fit its desire to terminate [the employee] rather than neutrally enforcing an existing policy." *Id.*

The magistrate judge did not err in finding Byrd failed to present a convincing mosaic of circumstantial evidence giving rise to a genuine dispute of material fact as to his ADAAA discrimination claim. Byrd first contends the temporal proximity between his protected activity and his firing creates a genuine dispute of material fact, such that Austal's reason for terminating him could have been pretextual. However, Byrd made his initial request for ac-

commodations in late June 2023, and he was terminated approximately five months later, in early November 2023. As Austal argues, Byrd was continually tardy or absent from his job without medical excuses after he requested accommodations in June 2023. Because Byrd accrued multiple attendance infractions in the several months between his request and his ultimate termination, the available evidence does not demonstrate "suspicious timing" or "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" about the timing of Byrd's request for accommodations and his termination. *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (stating to show an employer's proffered reasons for its action were merely pretextual, an employee must provide evidence revealing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence"); *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1309, 1312 (11th Cir. 2023) (stating "the intervening discovery of employee misconduct can sever the causal inference" assigned to the time between when the employee engaged in his protected activity and when he was terminated).

Next, Byrd asserts his performance indicated he was a strong performer at Austal. The evidence largely contradicts this claim. Byrd's performance review from Ecker noted "he has shown a lot of progress and initiative," but it also stated his overall rating was "Meets Standards," his attendance was "Not Effective," and he should accrue "[z]ero occurrences between now and next review

period." Ecker also testified Byrd merely met standards—as opposed to receiving a "solid performance" or "highly effective rating"—and "was performing better but struggling early" in the evaluation period. Billy Johnson, Byrd's prior supervisor, also noted Byrd incurred an occurrence during his 90-day review period and that Byrd was later transferred to Ecker's team "not due to some outstanding performance" but because Ecker required a B-Class Electrician for his crew. Taken together, the evidence does not suggest Byrd was a particularly strong employee, even excluding his attendance deficiencies.

Third, Byrd asserts he received double the occurrences required for termination, and it was only after he sought leave that Austal enforced its attendance policy. Though Byrd correctly notes Austal could have flagged his attendance issues earlier, the unrefuted evidence also shows (1) both of his performance evaluations noted his attendance deficiencies; (2) he received a final warning prior to his termination; (3) Austal's policy allowed for the verbal, written, and final warnings to be given simultaneously; (4) his excessive occurrences were noted after an attendance audit by Stephanie Carnley and Tenaysha Carroll; and (5) Ecker texted Byrd in October 2023 that he had no more medical excuses remaining and should inform HR about his ongoing ankle issues. Though Byrd could have been terminated sooner than he was, this fact does not present a convincing mosaic of circumstantial evidence that would allow a jury to infer that Austal intentionally discriminated against him. *See Lewis*, 934 F.3d at 1185-86.

Byrd failed to provide a convincing mosaic of evidence suggesting Austal's firing was merely pretextual, and we affirm as to this issue.

## II.  RETALIATION

Lastly, Byrd argues the close proximity between his request for accommodations and his termination establishes causation between his protected activity and the adverse employment action. Similar to discrimination claims, if an employee satisfies his prima facie burden of showing retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the adverse action. *Ismael*, 161 F.4th at 759 (applying the *McDonnell Douglas* framework in the context of retaliation claims brought under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964). If the employer provides evidence that it had a legitimate reason for taking adverse action against the plaintiff, the *McDonnell Douglas* framework "simply drops out of the picture." *Id.* at 764 (quotation marks omitted). Thus, a plaintiff may still establish a "convincing mosaic" sufficient to survive summary judgment by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which retaliatory intent might be inferred; (2) "systematically better treatment of similarly situated employees"; and (3) that "the employer's justification is pretextual." *Id.* at 760 (quotation marks omitted). A plaintiff cannot lose at summary judgment on the "sole ground[]" that he cannot disprove the defendant's rationale for its adverse employment action. *Id.* at 764.

To state a retaliation claim under the ADA, a plaintiff must show (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between the adverse action and his protected activity. *Frazier-White*, 818 F.3d at 1258. We have held causation is met if there is sufficient evidence the decisionmaker was aware of the employee's protected conduct and there was a close temporal proximity between the employer's awareness and the adverse action. *Berry*, 84 F.4th at 1309. "[A] period as much as one month . . . is not too protracted," *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004, but a three-or four-month gap is too attenuated to show causation, absent other evidence, *see Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007); *see also Higdon*, 393 F.3d at 1220 ("If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law.").

The magistrate judge did not err in granting summary judgment on Byrd's ADAAA retaliation claim, because the undisputed evidence showed there was no close temporal proximity between his initial request for accommodations and his ultimate termination. Contrary to Byrd's assertion on appeal he was fired "just weeks" after he sought accommodations from Austal, the evidence shows several months passed between Byrd's June 2023 request for accommodations and his November 2023 termination. We have previously held that a three-to-four-month gap between protected activity and an adverse employment action is too attenuated to establish causation, absent some other evidence. *See Thomas*, 506

F.3d at 1364. Byrd has submitted no evidence that Austal's "desire to retaliate was the but-for cause" of his termination. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) (holding that, for a plaintiff to succeed on a retaliation claim, he must prove "the desire to retaliate was the but-for cause of the challenged employment action"). Additionally, because Byrd continued to accrue unexcused occurrences after making his original request for accommodations, he broke the chain of causation. *See Berry*, 84 F.4th at 1309, 1312 (stating even if there is close temporal proximity between the employee's protected activity and the adverse employment action, we have held the chain of causation is broken when an employee engages in intervening acts of misconduct). Accordingly, we affirm the magistrate judge's grant of summary judgment on Byrd's retaliation claim.

## III. CONCLUSION

The magistrate judge did not err in finding that Byrd was not a qualified individual with a disability because regular attendance was an essential function of his job as a B-Class Electrician, and he could not perform this essential function with or without a reasonable accommodation. Second, the magistrate judge did not err in finding that Byrd, not Austal, caused a breakdown in the interactive process because Byrd failed to provide requested medical documentation that Austal needed to process his ADAAA leave of absence claim. Third, the magistrate judge did not err in finding that there was no genuine dispute of material fact as to whether Austal's firing of Byrd was pretextual because Byrd failed to present a con-

vincing mosaic of circumstantial evidence that would lead a reasonable jury to believe that his attendance issues were mere pretext for his discriminatory termination.  Lastly, the magistrate judge did not err in finding that summary judgment was appropriate as to Byrd's protected activity and the adverse employment action taken against him.  Accordingly, we affirm.

**AFFIRMED.**